Argued and submitted February 12, reversed and remanded September 2, 1998

In the Matter of the Compensation of
Rose E. Venetucci, Claimant.

Rose E. VENETUCCI,
*Petitioner,*

*v.*

METRO
and SAIF Corporation,
*Respondents.*

(WCB 96-04416; CA A97153)

964 P2d 1090

Andrew H. Josephson argued the cause and filed the brief for petitioner.

David Runner argued the cause and filed the brief for respondents.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

Edmonds, J., dissenting.

## WARREN, P. J.

Claimant seeks review of an order of the Workers' Compensation Board affirming the administrative law judge's (ALJ) dismissal of her request for hearing. The issue is whether the ALJ erred by dismissing claimant's claim because she failed to seek reconsideration of a notice of closure. Because we conclude that claimant was not required to seek reconsideration of the notice of closure, we reverse.

Claimant suffered a compensable heel injury while working for Metropolitan Service District (Metro). Metro's insurer, SAIF, originally calculated claimant's average weekly wage at $515 and compensated her based on that amount from August 25, 1993, through December 15, 1993. On May 18, 1994, SAIF sent her a notice of closure. That notice provided that "[d]eduction of overpaid temporary disability, if any, from unpaid permanent disability is approved." Claimant was not awarded permanent disability in that notice of closure.

On June 16, 1994, an audit by SAIF alleged that claimant's modified weekly wage rate was $371.13 and that SAIF had made an overpayment of $2,392.05.[1] SAIF mailed claimant notice of this alleged overpayment the following day, indicating that it would set off the overpayment against any future awards of permanent disability.

On claimant's motion for reconsideration, the Department of Consumer and Business Services (DCBS) rescinded the May 18 closure as premature.[2] SAIF issued a second notice of closure on October 30, 1995, that provided an award of $2,237.02 for permanent partial disability. That notice contained the same general language as the first regarding overpayment and setoff. Nothing in the second notice, however, referred specifically to an actual overpayment.

---

[1] The auditor recalculated claimant's average weekly wage. The manner of calculating claimant's weekly wage is the issue in the underlying appeal but was never reached below due to the Board holding that it did not have jurisdiction.

[2] The Department found that claimant was not medically stationary at the time of claim closure.

On November 28, 1995, SAIF advised claimant by letter that the overpayment was being deducted from her award for permanent partial disability. Claimant did not request reconsideration of the second notice of closure but instead sought a hearing before the Board, contesting SAIF's amended calculation of her weekly income and alleged overpayment.

SAIF moved to dismiss the request for hearing based on ORS 656.268, which provides, in part:

"(4)(e)   If a worker objects to the notice of closure, the worker first must request reconsideration by the department under this section. The request for reconsideration must be made within 60 days of the date of the notice of closure."

SAIF argues that claimant's objection was to the second notice of closure and that, having failed to seek reconsideration of that notice, she was prohibited from proceeding directly to hearing. The ALJ agreed, relying on the Board's decision in *William T. Masters*, 48 Van Natta 1788 (1997).[3]

Claimant argues that she was not required to seek reconsideration because her objection was not to the second notice of closure, but, rather, it arose from the subsequent letter informing her that her award of permanent disability was being withheld due to the alleged overpayment. That issue, she argues, is controlled by ORS 656.283(1), which provides, in part:

"Subject to ORS 656.319, any party or the Director of the Department of Consumer and Business Services may at any time request a hearing on *any matter concerning a claim*, except matters for which a procedure for resolving the dispute is provided in another statute * * *." (Emphasis supplied.)

ORS 656.704(3) provides that "matters concerning a claim under this chapter are those matters in which a worker's

---

[3] In *Masters*, relying on facts similar to those found here, the Board noted that an issue arises from the notice of closure when a subsequent audit reveals an overpayment. The Board retreated from that position in *Blaine P. Hosey*, 50 Van Natta 360 (1998). In *Hosey*, the Board held that an issue arises from the notice of closure when that issue is manifest in the notice.

right to receive compensation, or the amount thereof, are directly in issue." Claimant contends that the letter informing her that her permanent disability was being withheld placed her right to receive compensation directly in issue and she permissibly proceeded by requesting a hearing. We agree.

The underlying issue in this case is whether SAIF correctly calculated claimant's wage rate for purposes of paying temporary partial disability. That calculation forms the basis for SAIF's assertion that claimant was overpaid for the period of August 25, 1993, through December 15, 1993. However, that issue was never reached below because the ALJ and the Board held that claimant's failure to seek reconsideration of the October 30, 1995, notice of closure precluded her from raising that issue at hearing. ORS 656.268(4)(e) requires that a claimant who objects to a notice of closure must first seek reconsideration of that notice. ORS 656.283(7) prohibits a claimant from raising issues at a hearing that were not raised at reconsideration. Taken together, those statutes preclude a claimant from raising an issue at hearing if that issue stems from an objection to a notice of closure that was not preserved by mandatory reconsideration. The issue here is whether claimant's claim is an objection to a notice of closure so that it falls within the requirements of mandatory reconsideration.

The deciding question in this case is what is claimant objecting to? For her claim to be barred, she must be objecting to the October 30, 1995, notice of closure. In that notice, SAIF concluded that claimant is "entitled to compensation for Temporary Partial Disability for the period from Aug 23, 1993 through Dec 16, 1993." Those benefits had already been paid. The notice also provided that claimant was awarded permanent partial disability in the amount of $2,237.02. That money had not yet been paid. The notice contained a provision that, "Deduction of overpaid temporary disability, if any, from unpaid current or future permanent or temporary disability awards or payments is allowed." On its face, that notice of closure does not reveal SAIF's intent to withhold claimant's award of permanent partial disability to recover its alleged overpayment of temporary benefits.

However, SAIF and the dissent argue that SAIF's earlier letter informing claimant of the overpayment put claimant on notice of its intent to withhold payment. While that might be true, the fact that claimant was on notice of SAIF's intent should not be construed to mean that claimant must seek reconsideration of a notice of closure with which she does not object. Claimant had no objection to any award provided in the notice of closure. She did not object to either the time period established for partial disability or the award of permanent disability. In fact, claimant had no objection until 28 days later, when SAIF manifested its intent to withhold payment of her permanent disability. At that point, claimant's right to receive compensation was placed directly in issue and she subsequently requested a hearing on that issue. Her objection was not to the notice of closure but, rather, to SAIF's letter informing her that she would not receive her permanent disability payment. That issue can be raised any time at hearing pursuant to ORS 656.283(1).

The dissent places great stock in SAIF's earlier correspondence, which notified claimant of its intent to deduct future payments in satisfaction of the alleged overpayment and in the notice of closure provision that allowed for setoff of overpayments, "if any," from future awards. However, nothing in the notice of closure indicated SAIF's present intention to withhold claimant's permanent disability to recover the overpayment. Lacking that manifestation of intent, we cannot insert an inference into the notice of closure. ORS 656.268(4)(e) requires claimants seek reconsideration if they object to the "notice of closure," not if they object to anything associated with a notice of closure. In short, for mandatory reconsideration pursuant to ORS 656.268(4)(e) to preclude further review, a claimant must have an objection that is manifest in the notice of closure. Here, claimant's objection arose upon receipt of SAIF's letter informing her of its intent to withhold payment of her permanent disability. That intent was not manifest in the notice of closure.

Reversed and remanded.

**EDMONDS, J.,** dissenting.

The evidence is uncontested that on June 17, 1994, SAIF sent claimant a letter that expressed the calculation of

how an overpayment for time loss occurred in 1993 for the period of August 25, 1993 through December 15, 1993, because of incorrect wage information. The letter calculated the overpayment in the amount of $2,392.05 and said, in part:

"Your claim has been closed with no permanent partial disability award granted. This overpayment may be recovered from future claim compensation.

"If you disagree with this statement, please contact me within 30 days. If I do not hear from you within this time, I will assume you agree this is an accurate accounting."

On October 30, 1995, SAIF issued the notice of closure, the language of which is the basis for the issue that the majority frames. The notice informed claimant that she was entitled to time loss for the period of August 23, 1993, through December 16, 1993, and to an award for permanent partial disability in the amount of $2,237.02. It also said, *"Deduction of overpaid temporary disability,* if any, from unpaid current or future permanent or temporary disability awards or payments *is allowed."* (Emphasis supplied.) Finally, it stated, "IF YOU DISAGREE WITH THIS NOTICE OF CLOSURE, YOU HAVE THE RIGHT TO ASK FOR RECONSIDERATION. THIS MUST BE DONE WITHIN 60 DAYS FROM THE DATE OF THIS NOTICE OF CLOSURE." Claimant did not request reconsideration of the notice of closure, even though she had earlier requested reconsideration of a prematurely issued notice of closure received before the June 1994 letter. On November 28, 1995, SAIF offset payment of claimant's permanent partial disability award because of the overpayment pursuant to its October 30 notice. Claimant first requested a hearing on that action on May 7, 1996. The Board dismissed for lack of jurisdiction under ORS 656.283(7) because claimant had not requested reconsideration of the notice of closure authorizing the offset, and claimant seeks review of that ruling.

On review of the Board's decision, claimant argues:

"Claimant should not be required to first request an order on reconsideration in order for the Hearings Division to retain jurisdiction regarding the issue of rate of temporary disability benefits. The reconsideration process is

reserved for issues regarding claim closure. ORS 656.283(7). The rate of temporary disability benefits is not created or arise [*sic*] at the time of claim closure. It is an issue that may arise at any time. The issue of rate of temporary disability benefits can be brought directly into hearing without going through the reconsideration process because it is a matter concerning a claim."

Regardless of the argument raised by claimant, the majority opines that the "notice of closure does not reveal SAIF's intent to withhold claimant's award of permanent partial disability to recover its alleged overpayment of temporary benefits." 155 Or App at 563. Therefore, it concludes that ORS 657.283(7) did not require claimant to request reconsideration of the notice by the department before she requested a hearing before the Board. ORS 656.283(7) provides, in part:

"Evidence on an issue regarding a notice of closure or determination order that was not submitted at the reconsideration required by ORS 656.268 is not admissible at hearing, and issues that were not raised by a party to the reconsideration may not be raised at hearing unless the issue arises out of the reconsideration order itself."

ORS 656.283(7) is clear on its face. Issues resolved by a notice of closure cannot be raised to the Board unless they were first raised to the department on reconsideration of the notice of closure. Here, the offset was expressly mentioned in the notice of closure. The notice says, "Deduction of overpaid temporary disability benefits, if any, from unpaid current or future permanent or temporary disability awards or payments *is allowed*." (Emphasis supplied.) The notice of closure could not be more express with the use of its "is allowed" language. The language tells claimant that if overpaid benefits exist, SAIF is going to offset the overpayment against payments on the award of permanent disability. The notice was not news to claimant. She knew from the June 17, 1994, letter that there had been an overpayment of time loss. The majority's reading of the language of the closure notice is untenable.

Even claimant does not argue that she was not aware of SAIF's intention to affect an offset by its notice of closure. Rather she contends that the statute does not control

because the issue she now contests is the *rate* that SAIF used to arrive at the conclusion in June 1994 that there was an overpayment. In other words, she appears to be asserting that there really was not an overpayment. SAIF is correct when it argues that claimant's contention is defeated by the language of ORS 656.268(4)(b), which provides that a notice of closure must inform the worker of the "amount and duration of temporary total or temporary partial disability compensation" and "of the right of the worker to request reconsideration." Here, the notice of closure told claimant all that the statute required regarding the amount of permanent disability including the fact that claimant's award would be offset by the overpayment of time loss, "if any" and that if she disagreed with the contents of the notice of the closure, she was required to seek reconsideration. Even though SAIF offset claimant's permanent disability award within the 60-day period for reconsideration, claimant still did not seek reconsideration but waited months later before she requested a hearing.

For these reasons, I dissent.