Argued and submitted November 30, 1998, affirmed April 7, 1999

In the Matter of the Compensation of
Bryan M. Fitzsimmons, Claimant.

SAIF CORPORATION
and Island City Steel,
*Petitioners,*

*v.*

Bryan M. FITZSIMMONS,
*Respondent.*

(96-08824; CA A101755)

978 P2d 404

David L. Runner argued the cause and filed the brief for petitioners.

R. Adian Martin argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Armstrong, Judges.

EDMONDS, P. J.

---

* Deits, C. J., *vice* Warren, P. J., retired.

## EDMONDS, P. J.

Insurer and employer seek review of a Workers' Compensation Board order in which the Board increased claimant's rate of temporary disability compensation. We review for errors of law, ORS 656.298(7), and affirm.

Claimant injured his elbow and filed a workers' compensation claim with his employer. After an initial denial, insurer accepted the claim and paid claimant temporary disability compensation based on a 52-week average wage of $247.67. Thereafter, insurer issued a notice of closure, and claimant requested reconsideration on several issues but did not specifically raise the issue of the *rate* of compensation. After the request for reconsideration, insurer sent an explanation of its calculations to claimant. The Department of Consumer and Business Services (Department) affirmed the insurer's notice of closure in all respects.

Claimant requested a hearing and raised the issue of the compensation rate for the first time. The administrative law judge (ALJ) concluded that claimant's failure to raise the issue of the compensation rate on reconsideration precluded him from raising it at the hearing under ORS 656.283(7). On review, the Board disagreed and then concluded that insurer had improperly calculated the rate of temporary disability under the version of OAR 436-60-025(5)(a) in effect at the time of claimant's injury.

Insurer first assigns error to the Board's conclusion that claimant was not precluded from raising the rate issue at hearing. Insurer argues that the payment of compensation at a particular rate was sufficient to put claimant on notice and that, because the issue was not raised on reconsideration, claimant is precluded under ORS 656.283(7) from raising the issue at hearing.[1] Claimant asserts that the reconsideration process is not a bar to issues that are not manifest in the notice of closure and that the notice did not specify the compensation rate.

---

[1] Insurer does not argue that claimant received sufficient information to raise the rate issue while reconsideration was pending before the department and before the notice of closure was affirmed.

ORS 656.283(7) provides, in relevant part:

"Evidence on an issue regarding a notice of closure or determination order that was not submitted at the reconsideration required by ORS 656.268 is not admissible at hearing, and issues that were not raised by a party to the reconsideration may not be raised at hearing unless the issue arises out of the reconsideration order itself."

Claimant argues that the facts in this case are not distinguishable from those in *Venetucci v. Metro*, 155 Or App 559, 964 P2d 1090 (1998). In that case, the claimant requested a hearing after receiving a letter from the insurer notifying her that compensation had been overpaid. Even though the issue of overpayment was not raised on reconsideration, we held that it could be litigated at hearing because the objection was not to an issue raised at closure. Instead, the objection was to an issue raised in the letter, and the rate of compensation had not been manifest in the notice of closure. *Venetucci*, 155 Or App at 564. Therefore, the claimant in *Venetucci* was not precluded by ORS 656.283(7) from objecting at hearing to the rate of compensation.

■ Here, neither the rate nor the method of calculation was specified in the notice of closure. The notice informed claimant of the number of days of total disability and the total amount of temporary disability paid before closure. Although insurer argues that the facts in this case can be distinguished from the facts in *Venetucci*, we are not persuaded that those distinctions make any difference. As in *Venetucci*, the notice of closure did not make the rate of compensation manifest. Accordingly, the Board did not err when it held that claimant was not precluded by ORS 656.283(7) from raising the issue of the *rate* of compensation at hearing.

The next issue is whether the Board's interpretation of OAR 436-60-025(5)(a) (WCD Order 94-055), as applied to the facts in this case, is correct. That rule provides, in part:

"(5) The rate of compensation for workers regularly employed, but paid on other than a daily or weekly basis, or employed with unscheduled, irregular or no earnings shall be computed on the wages determined by this rule. * * *

"(a) For workers employed on call, paid hourly, paid by piece work or with varying hours, shifts or wages, insurers

shall use the worker's average weekly earnings with the employer at injury for the 52 weeks prior to the date of injury. For workers employed less than 52 weeks or where *extended gaps* exist and where there has been no change in the amount or method of the wage earning agreement, insurers shall use the actual weeks of employment with the employer at injury up to the previous 52 weeks. Where there has been a change in the amount or method of the wage earning agreement during the previous 52-week period, insurers shall use only the actual weeks of employment under the wage earning agreement at time of injury. For workers employed less than four weeks, insurers shall use the intent of the most recent wage earning agreement as confirmed by the employer and the worker." (Emphasis added.)

■    The facts are not in dispute. Claimant's injury occurred on September 2, 1995. He worked during all of the 52 weeks before his injury with the exception of 15 weeks between December 6, 1994, to April 1, 1995, due to a "regular, seasonal layoff." Claimant's wages totaled $12,879 for the 52-week period before his injury. Insurer determined his compensation rate by dividing the total by 52 and arriving at an average weekly wage of $247.67. The Board concluded that under the rule, the 15-week layoff constituted an "extended gap" and that the 15 weeks had to be excluded from the calculation. As a result, the Board divided the total wages by 37 weeks to arrive at an average weekly wage of $348.08.

■■    Whether insurer or the Board's calculation is correct turns on the meaning of "extended gap" and the purpose of the rule. Insurer views the rule as providing for an average wage loss. The Board interprets the rule to approximate the worker's wage at the time of injury. In interpreting an administrative rule, our task is to determine the meaning of the words used, giving effect to the intent of the enacting body. *Abu-Adas v. Employment Dept.*, 325 Or 480, 485, 940 P2d 1219 (1997). We begin with the text and context of the rule. Context includes "other provisions of the same rule, other related rules, the statute pursuant to which the rule was created, and other related statutes." *Abu-Adas*, 325 Or at 485.

The first sentence of OAR 436-60-025(5)(a) contemplates that an hourly worker's wages be calculated by averaging weekly earnings for the 52 weeks before the injury. The second sentence creates two exceptions to that rule: (1) if the worker was employed for less than 52 weeks, or (2) if "extended gaps" in employment occurred, then the insurer is obligated to calculate an average wage by using the "actual weeks of employment * * * at injury." If the worker's hourly wage has changed during the applicable period, then the third sentence requires an insurer to use only the weeks at the most recent wage "at the time of injury." Finally, the last sentence provides for using the intent of the "most recent wage earning agreement" to arrive at an hourly wage for a worker employed less than four weeks. While the text of the rule does not define "extended gap," it consistently provides for methods to calculate the wage at the time of injury when less than a 52-week work period is applicable.[2]

The above purpose of the rule is consistent with the legislature's mandate. OAR 436-60-025(5)(a) was promulgated pursuant to ORS 656.210, which provides:

"(1)   When the total disability is only temporary, the worker shall receive during the period of that total disability compensation equal to 66-2/3 percent of wages, but not more than 100 percent of the average weekly wage nor less than the amount of 90 percent of wages a week or the amount of $50 a week, whichever amount is lesser. * * *

"(2)(a)   For the purpose of this section, the weekly wage of workers shall be ascertained by multiplying the daily wage the worker was receiving by the number of days per week that the worker was regularly employed.

"(b)   For the purpose of this section:

---

[2] We note that insurer acknowledges in its brief on review that it has been unable to find any legislative or administrative history that is helpful in construing "extended gap." The Board has also stated that it could not find guidance in the rule adoption documents. *Ken T. Dyer*, 49 Van Natta 2086, 2087 (1997). At oral argument, insurer suggested that the Director of the Department of Consumer and Business Services had submitted a brief to the Board that provided guidance. *See* Workers' Compensation Division's Brief on Remand, *Earin J. Hadley*, 49 Van Natta 1101 (1997) (WCB No. 95-01763). Upon review, we conclude that the Attorney General's "argument" on behalf of the Director in that brief does not aid the interpretation of the rule.

"(A)  *The benefits of a worker who incurs an injury shall be based on the wage of the worker at the time of injury.*

"\* \* \* \* \*

"(c)  *As used in this subsection, 'regularly employed' means actual employment or availability for such employment. For workers not regularly employed and for workers with no remuneration or whose remuneration is not based solely upon daily or weekly wages, the Director of the Department of Consumer and Business Services, by rule, may prescribe methods for establishing the worker's weekly wage.*" (Emphasis added.)

The statute's focus is on the wage at the time of injury. *See Hadley v. Cody Hindman Logging*, 144 Or App 157, 161, 925 P2d 158 (1996) (holding that "ORS 656.210(2)(b)(A) contains a clear expression of a legislative policy to pay injured workers benefits based on the wage of the worker at the time of injury"). The rule is aimed at proving a method of "approximating the wage amount at the time of injury," *id.* at 160, when there is less than a 52-week work period involved. The term "extended gap" in the rule need not correlate to an exact number of days nor to a list of narrow, specific circumstances. Rather, it can have an elastic meaning as long as the application of the term accomplishes what the legislature intended. We hold that the Board's application of the "extended gap" exception to the circumstances of this case falls within the ambit of the rule's purpose to provide claimant with a benefit based on his wage at the time of his injury.

Affirmed.