Argued and submitted January 26, 1999, reversed and remanded August 23, 2000

In the Matter of the Compensation of
Pedro Frias, Claimant.

SAIF CORPORATION
and J & R Contractors, Inc.,
*Petitioners,*

*v.*

Pedro FRIAS,
*Respondent.*

(97-03188; CA A101756)

8 P3d 1005

David L. Runner argued the cause and filed the brief for petitioners.

Joseph A. DiBartolomeo argued the cause for respondent. With him on the brief was Lavis & DiBartolomeo.

Before Edmonds, Presiding Judge, and Armstrong and Kistler,* Judges.

ARMSTRONG, J.

---

* Kistler, J., *vice* Warren, P. J., retired.

## ARMSTRONG, J.

Employer seeks review of an order of the Workers' Compensation Board awarding claimant temporary disability benefits. Employer assigns error to the Board's exclusion of periods during which employer had no work for claimant from the calculation of claimant's average weekly wage. OAR 436-060-0025(5)(a)(A). We review for errors of law and reverse.

Most of the relevant facts are not in dispute. Claimant was employed as a construction worker for employer. The hours claimant worked were somewhat irregular. After he had been working for employer for about seven months, claimant slipped and fell from a roof while at work. The fall caused a fracture of one of his thoracic vertebrae, and claimant submitted a claim for temporary disability compensation. Employer accepted the claim.

Originally, employer calculated claimant's time loss rate based on a 40-hour work week. Because claimant's hourly wage was $12, his average weekly wage under employer's initial calculation was $480.[1] Apparently, employer initially assumed that claimant worked all 52 weeks of the year, which would make his yearly gross income $24,960. However, a few months after the initial acceptance, employer notified claimant that it had determined that he was entitled to a lower level of benefits than he had been receiving. Part of the reason for the change was employer's realization that claimant had been employed for only part of the year, from May through the beginning of December, during which he had earned only $9,300 in gross wages. Employer divided that gross income by the number of weeks that claimant had worked for employer, which employer calculated to be 31.6 weeks, to produce an average weekly wage of $294.30 rather than $480. In calculating the number of weeks that claimant had worked for employer, employer

---

[1] Under ORS 656.210(1), temporary total disability compensation is set at 66⅔ percent of a claimant's wages, but no more than the average weekly wage for all workers. *See* ORS 656.211. Hence, the temporary disability compensation paid to claimant would have been less than the $480 that employer had calculated his average weekly wage to be.

included in the calculation two time periods in which it had no work for claimant and one in which claimant was on vacation.[2] Including the vacation period and the two periods in which employer had no work for claimant as part of claimant's employment reduced claimant's average weekly wage, because claimant earned no wages during those periods.

Claimant sought a hearing to challenge the reduction in his benefits. His principal contention at the hearing was that the periods during which he did no work for employer should be excluded under OAR 436-060-0025(5)(a)(A) from the calculation of his average weekly wage, because those periods constituted extended gaps in his employment.[3] The administrative law judge (ALJ) agreed with claimant and ordered employer to recalculate claimant's temporary disability benefits based on an employment period that excluded the weeks in which claimant did no work for employer. Employer sought review, and the Workers' Compensation Board affirmed the ALJ, noting that, cumulatively, the gaps in claimant's employment amounted to 15 percent of his total employment and concluding that the gaps were therefore "extended."[4]

■    On review, employer argues that the Board erred in concluding that the two periods during which employer had no work for claimant were "extended gaps" under OAR 436-060-0025(5)(a)(A) and therefore subject to exclusion from claimant's weekly wage calculation. Employer challenges the Board's method of determining whether the gaps in a claimant's employment are extended. To do so, the Board adds up all the gaps during the preceding year (or during a worker's employment if less than a year) and then compares the sum to the span of the preceding year (or to the period of employment). If the sum of the gaps comprises a sufficiently high

---

[2] The vacation period was followed directly by a period in which employer had no work for claimant. For convenience, we refer to the vacation period and the period that followed as two separate periods in which claimant did no work for employer.

[3] See 169 Or App at 349 for the text of OAR 436-060-0025(5)(a)(A).

[4] Employer stipulated to the Board and to the ALJ after the hearing that the vacation period was an extended gap. Therefore, the vacation period is not included in the Board's calculation of the percentage of claimant's employment consists of gaps.

percentage of the whole, then the Board deems the gaps "extended" and does not include them in the weekly wage calculation. Apparently, the Board does not have a set cutoff below which it will not consider a sum of gaps to be extended; it simply makes the determination on a case-by-case basis in light of the percentages that it has previously viewed as extended.

If employer's position on appeal were accepted, claimant's average weekly wage would be $325.17, based on employer's stipulation to the Board that the vacation period was an extended gap. Under that stipulation, the vacation period of three weeks would be subtracted from the 31.6 total weeks of employment, leaving 28.6 weeks of employment. The gross earnings of $9,300 would then be divided by 28.6, making claimant's average weekly wage $325.17. On the other hand, if we accepted claimant's view that all of the periods of nonwork constitute an extended gap, his average weekly wage would be $394.07 ($9,300 in gross wages divided by 23.6 weeks of employment).

OAR 436-060-0025(5)(a)(A) provides, in part:

"(5) The rate of compensation for workers regularly employed, but paid on other than a daily or weekly basis, or employed with unscheduled, irregular or no earnings shall be computed on the wages determined by this rule. * * *

"(a) For workers employed seasonally, on call, paid hourly, paid by piece work or with varying hours, shifts or wages:

"(A) Insurers shall use the worker's average weekly earnings with the employer at injury for the 52 weeks prior to the date of injury. For workers employed less than 52 weeks or where extended gaps exist, insurers shall use the actual weeks of employment (excluding any extended gaps) with the employer at injury up to the previous 52 weeks."

OAR 436-060-0025 was promulgated by the Director of the Department of Consumer and Business Services (Director). We previously held that an earlier, similar version of the rule comported with the legislative intent of ORS 656.210(2)(b)(A) that " '[t]he benefits of a worker who incurs an injury shall be based on the wage of the worker at the time of injury.' " *Hadley v. Cody Hindman Logging*, 144 Or App 157, 160-61,

925 P2d 158 (1996) (quoting ORS 656.210(2)(b)(A)) (emphasis omitted). As we explained in *Hadley*, the Board's function in reviewing cases to which OAR 436-060-0025 applies is to "apply the methods prescribed by the Director in accordance with the intent of the legislature." *Id.* at 162. ORS 656.210(2) delegates no authority to the Board to do otherwise. *Id.* at 161.

■ We interpret administrative rules according to their plain meaning, considering the text of the rule in context. *SAIF v. Fitzsimmons*, 159 Or App 464, 468, 978 P2d 404 (1999), *rev den* 329 Or 589 (2000). The dispute in this case centers on the meaning of the term "extended gaps."[5] "Gap" means "a break in continuity: INTERVAL, HIATUS." *Webster's Third New Int'l Dictionary*, 935 (unabridged ed 1993). "Extended" means "drawn out in length," "lengthy," "protracted," or "prolonged." *Id.* at 804. Finally, "drawn-out" means "stretched to great or greater length * * *[;] made to seem or be longer than desirable or normal." *Id.* at 687.

To begin with, we note that nothing in the rule suggests that the gaps in a claimant's employment, whether extended or not, should be added up and evaluated as a sum. Indeed, the definition of "gap" indicates that it refers to a discrete time period; the fact that "gap" refers to a discrete time period suggests that each gap should be evaluated separately to determine whether it is extended. A contrary reading has the potential to allow the exclusion of all gaps, whether extended or not, simply because a claimant's employment happens to have had numerous gaps, the sum of which is substantial.[6] Such a reading clearly broadens the rule beyond its

[5] The Board assumed without deciding that the rule requires an evaluation of whether "extended gaps" exist even when an employee has been employed for fewer than 52 weeks in total. Based on the wording of the rule, we conclude that the rule does require such an analysis.

[6] Interpreting subsection (5)(a)(A) as the Board does also has the questionable result of making the issue of whether a gap is extended depend on the length of the employment relationship. For instance, a gap of a week in a four-week employment relationship would comprise 25 percent of the employment period and therefore would be subject to exclusion under the Board's analysis, whereas a gap of a week in a one-year relationship would comprise less than two percent of the employment period and thus presumably would not be extended. Although it is possible that the length of the employment could be a relevant factor in determining whether a gap is extended, we see nothing in the wording of the rule to indicate that that determination should turn solely on the length of the relationship, as it does under the Board's current analysis.

plain meaning, because the rule directs that only extended gaps be excluded. Moreover, when the sum of the gaps is evaluated instead of each individual gap, "extended" loses its meaning. It is difficult or impossible to discern what could be meant by a "drawn out or prolonged" sum because those words, which properly define "extended," are clearly temporal concepts, whereas "sum" is a quantitative concept. Because "gap" is a temporal concept, as is "extended," the phrase "extended gap" makes sense, but the phrase "extended sum" does not. The use of the modifier "any" before the phrase "extended gaps" reinforces the view that "gaps" are discrete events. Again, excluding other gaps if their sum is substantial does more than the rule directs because it fails to focus on whether each gap is extended in deciding whether to exclude it; thus "any gaps" could be excluded under the Board's interpretation rather than only "any extended gaps," as the rule directs.

■■ Our reading of the text of the rule is supported by its context as well. The context of a rule includes other subsections of the same rule as well as other related rules. *Fitzsimmons*, 159 Or App at 468. OAR 436-060-0025(5)(m) explains how to calculate average wages for workers who have cyclic schedules:

> "For workers with cyclic schedules, insurers shall average the hours of the entire cycle to determine the weekly wage. For purposes of temporary disability payments, the cycle shall be considered to have no scheduled days off. For example: A worker who works ten hours for seven days, has seven scheduled days off, then repeats the schedule, is considered to have a 14[-]day cycle. The weekly wage and payment schedule would be based on 35 hours a week with no scheduled days off."

For workers with cyclic schedules, subsection (5)(m) requires that regular time off be included in the weekly wage calculation. Thus, if a person works two weeks out of every five, the three weeks the person does not work are not excluded from the calculation as an extended gap. Instead, the three weeks off are included in the weekly average; that practice brings the claimant's weekly wage down to its actual average over the regular five-week period. In contrast, the Board's interpretation of subsection (5)(a)(A) paradoxically treats workers

"employed seasonally, on call, paid hourly, paid by piece work or with varying hours, shifts or wages" more favorably than those with cyclic schedules are treated under subsection (5)(m). The Board's interpretation of subsection (5)(a)(A) has that result because it potentially excludes all of the workers' time off due to lack of work or other reasons from the calculation of their weekly wages whenever the sum of those spans of nonwork is substantial or "extended." We can discern no basis for treating those with irregular employment schedules more favorably than those with cyclic schedules. Thus, as part of the context of subsection (5)(a)(A), subsection (5)(m) supports our conclusion that the Board's practice of adding up all of the gaps in a claimant's employment and then determining whether the sum is extended is erroneous.

In *Hadley*, we held that the Board's interpretation of an earlier version of OAR 436-060-0025(5)(a)(A) improperly added a requirement to the rule. *Hadley*, 144 Or App at 162. The Board's interpretation of the rule in *Hadley* required a claimant to show a change in the character of the employment relationship in order to establish an extended gap. Noting that the Board had no policy-making authority with respect to OAR 436-060-0025(5)(a)(A), we held "that the Board's interpretation constituted an unauthorized limitation on the director's authority * * * to prescribe methods for establishing wages at the time of injury." *Id.* In this case, rather than improperly narrowing the rule, the Board has improperly broadened it. The Director has specified that only extended gaps be excluded from the calculation of a claimant's average weekly wage. Nevertheless, the Board has interpreted the rule in such a way that it potentially excludes all gaps, provided that their sum is substantial. The Board has no more authority to broaden the rule beyond its terms than it does to narrow it. Its interpretation of OAR 436-060-0025(5)(a)(A) exceeds its authority.

■　　Having rejected the Board's practice of adding up all the gaps in a claimant's employment and then determining whether their sum is substantial, we now turn to a closer evaluation of the meaning of the term "extended gap." It is clear from the dictionary definitions of "extended" that a gap must be lengthy in order to be subject to exclusion under OAR 436-060-0025(5)(a)(A). *See* 169 Or App at 350. However,

as employer correctly points out, it can be difficult to judge whether a gap is lengthy without looking at the particular circumstances of each employment relationship. The definition of "drawn-out" as "longer than desirable or normal" supports employer's argument that "extended gap" is, in some sense, a relative term and that whether a gap of a certain length is extended will depend in part on the circumstances of the employment relationship. We therefore conclude that the determination of whether a gap is extended must be made in light of its length and of the circumstances of the individual employment relationship itself, including whether the parties contemplated that such gaps would occur when they formed the relationship.

Because we conclude that the Board's practice of evaluating gaps cumulatively does not comport with the language of OAR 436-060-0025(5)(a)(A), we reverse and remand for a reevaluation of whether the gaps in claimant's employment were extended.

Reversed and remanded.