Argued and submitted March 10, affirmed August 11, 2004

In the Matter of the Compensation of
Nahu Garcia, Claimant.

Nahu GARCIA,
*Petitioner,*

*v.*

SAIF CORPORATION
and Garcia Reforestation,
*Respondents.*

01-06191; A120446

95 P3d 1166

Aaron E. Clingerman argued the cause for petitioner. With him on the brief was Law Offices of Michael B. Dye.

David L. Runner argued the cause and filed the brief for respondents.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

LINDER, J.

### LINDER, J.

Claimant challenges an order of the Workers' Compensation Board (board) upholding SAIF's calculation of his temporary total disability (TTD) payments. We conclude that the board correctly upheld the calculation and affirm.

The facts are undisputed. Claimant started working as a tree planter for employer, a reforestation and fire cleanup company, in approximately 1999. He worked for employer seasonally, with each season's employment dependent on whether employer obtained a contract from the federal government. In addition, whether employer had work for claimant depended on the weather; during the winter when there was snow in the mountains, no work was available, and, during the summer, fire danger either prevented work or reduced work hours. When each job assignment concluded, claimant contacted employer to learn when he would next be needed.

For each job assignment, employer required claimant to sign an employment agreement that set forth the expected period of work under a particular federal contract, the location of the work site, and the pay. In 2001, claimant signed employment agreements with employer for the periods from February 26 through March 9, 2001, and from April 16 through May 24, 2001. During the period covered by those agreements, there were two stretches when work was unavailable—one for 6 days, the other for 17 days.

On May 31, 2001, claimant suffered a compensable injury to his low back while working for employer. SAIF, employer's insurer, began paying claimant TTD, which it calculated by averaging claimant's wages over the 52 weeks preceding the injury. *See* OAR 436-060-0025(5)(a)(A). Claimant sought a hearing before an administrative law judge (ALJ) challenging that calculation. He argued that the gaps in his employment—that is, the periods during which he was not covered by an employment agreement and the 6- and 17-day periods when work was unavailable—should have been excluded in calculating his average weekly wage. At the hearing, claimant and SAIF agreed that, because claimant is a seasonal worker, OAR 436-060-0025(5)(a)(A) governs the

calculation of TTD for claimant. That rule requires an insurer to use a worker's average weekly earnings over the 52 weeks preceding the injury unless the worker was employed for fewer than 52 weeks or there were "extended gaps" during the worker's employment, in which case the insurer is to use actual weeks of employment to calculate the worker's average weekly wage. *Id.*

Before the ALJ, claimant argued that only his actual weeks of employment should have been included in the calculation because the gaps in his employment were extended. SAIF responded that the gaps had been anticipated by the parties and therefore were not extended. The ALJ agreed with SAIF that the gaps were correctly included in the 52-week average.

Claimant sought review by the board. There he renewed his argument that the gaps in his employment were extended. He also offered an alternative argument: that, regardless of whether the gaps were extended, OAR 436-060-0025(5)(a)(A) allows an insurer to consider only periods of actual employment in calculating a seasonal worker's average weekly wages and that he was "actually employed" only when employment agreements were in effect.

The board rejected both arguments. With respect to whether the gaps were extended, it concluded that the parties had anticipated that claimant would work during periods when employment agreements between the parties were in force and that gaps that occurred between agreements therefore were contemplated by the parties and were not extended. As for the two gaps that occurred during periods while employment agreements were in effect—6 and 17 days—the board concluded that those gaps were too short to be deemed extended. Finally, as to claimant's alternative argument— that only the periods during which employment agreements were in effect constituted "actual employment" for purposes of averaging his weekly wages—the board disagreed. It reasoned that claimant's job with employer was "continuing and has been ongoing" "since at least 1999, albeit seasonally," and that the employment relationship between the parties "was a series of specific arrangements." Accordingly, the board affirmed the ALJ's order.

On appeal, claimant makes the same arguments, in reverse order. First, he contends that he was not "actually employed" between employment agreements and that those periods should therefore be excluded in calculating his average weekly wage. Second, he seeks a remand to the board for a determination of whether the remaining 6- and 17-day gaps were extended, asserting that the board failed to consider the length of each gap relative to the length of each employment agreement and did not explain its rationale for concluding that the gaps were not extended. We review the board's legal conclusions for errors of law and its factual determinations for substantial evidence. ORS 656.298(7); ORS 183.482(7), (8).

We address claimant's "actual employment" argument first. OAR 436-060-0025(5)(a)(A) contains the general rule that wages of seasonal and other specified types of workers are to be calculated by averaging earnings over the 52 weeks preceding the injury.[1] It goes on to create two exceptions to that general rule: if the worker is employed for fewer than 52 weeks or if "extended gaps" in employment occurred, the insurer is to calculate the average wage by using the "actual weeks of employment" at the time of the injury. *See id.*; *SAIF v. Fitzsimmons*, 159 Or App 464, 469, 978 P2d 404 (1999), *rev den*, 329 Or 589 (2000) (so stating with respect to structurally identical earlier version of rule). Therefore, the "actual employment" inquiry becomes necessary only if either of the two exceptions applies.

■ As to the first exception—employment for fewer than 52 weeks—claimant acknowledges that he has worked for

---

[1] OAR 436-060-0025(5) provides, in part:

"(a) For workers employed seasonally, on call, paid hourly, paid by piece work or with varying hours, shifts or wages:

"(A) Insurers shall use the worker's average weekly earnings with the employer at injury for the 52 weeks prior to the date of injury. For workers employed less than 52 weeks or where extended gaps exist, insurers shall use the actual weeks of employment (excluding any extended gaps) with the employer at injury up to the previous 52 weeks. For workers employed less than four weeks, insurers shall use the intent of the wage earning agreement as confirmed by the employer and the worker."

The rule has since been amended in a manner that is not material to this case. We therefore refer to the version of the rule that was in effect in 2001, the time of claimant's injury.

employer since at least 1999. He asserts, however, that the fact that he signed separate employment agreements with employer before each job means that he worked for employer fewer than 52 weeks before his injury. We disagree. A seasonal worker, by definition, does not work continuously. *See Webster's Third New Int'l Dictionary* 2049 (unabridged ed 1993) (defining seasonal as "affected by or dependent on a season : not continuous"). In this context, to treat the agreements as somehow distinguishing claimant's employment status from that of any other seasonal worker would elevate form over substance. The parties' testimony at the hearing indicated that the agreements served to clarify the expectations and details of work to be performed under a particular federal contract rather than to establish anew the employer/ employee relationship. Claimant had worked for employer seasonally since at least 1999, two years before his injury. Moreover, the parties assumed that claimant would continue working for employer, as shown by their testimony that, after each job concluded, claimant would contact employer to learn when he would next be needed for work.

■ Next, we consider the second potential exception— that for "extended gaps." Whether a gap is extended and therefore should be excluded in calculating a worker's average weekly wage depends on "its length and o[n] the circumstances of the individual employment relationship itself, including whether the parties contemplated that such gaps would occur when they formed the relationship." *SAIF v. Frias,* 169 Or App 345, 353, 8 P3d 1005 (2000).

■ There is no question that the bulk of the gaps involved here—the periods between employment agreements—were contemplated by claimant and employer. Employer had work for claimant only when it obtained contracts from the federal government, and everyone involved understood that work on those contracts was contingent on suitable weather, as is typical of seasonal employment. As for the two gaps that occurred during employment agreements, we agree with claimant and the board that they were not anticipated by the parties. We also agree with the board, however, that those two gaps were insufficiently lengthy to be considered "extended." Although the board did not expressly evaluate those two periods in light of the length of

the employment agreements, as claimant urges we should require it to do on remand, it was aware of the length of those agreements when it concluded that the gaps were not "extended, *i.e.,* 'drawn out in length.' " As such, we conclude that the board's finding on that point is supported by substantial evidence.

Affirmed.