Argued and submitted November 3, 2005, reversed and remanded
September 27, 2006, petition for review denied February 6, 2007
(342 Or 344)

MAYFLY GROUP, INC.,
an Oregon corporation,
*Appellant,*

*v.*

Jerry RUIZ,
dba J. Ruiz Farms,
and Jeff Ruiz,
dba J. Ruiz Farms,
*Respondents.*

02C-20119; A124917

144 P3d 1025

John M. Berman argued the cause and filed the briefs for appellant.

David A. Hilgemann argued the cause for respondents. With him on the brief was Law Offices of David Hilgemann.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge,* and Linder, Judge.

LINDER, J.

---

* Brewer, C. J., *vice* Wollheim, J.

**LINDER, J.**

Plaintiff appeals a judgment dismissing its claims for breach of contract and unjust enrichment. The trial court dismissed the claims after concluding that they were based on a contract that was illegal and, therefore, unenforceable. Plaintiff assigns error to the dismissal, arguing that, although performance of the contract violated a licensing statute, that violation did not automatically render the contract unenforceable as contrary to public policy. We agree, and reverse and remand.

■ In reviewing the dismissal of a complaint under ORCP 21, we accept as true all allegations in the complaint and give plaintiff the benefit of all favorable inferences that may be drawn from them. *Granewich v. Harding*, 329 Or 47, 51, 985 P2d 788 (1999). The complaint alleges that, at all material times, defendants were duly licensed farm labor contractors as defined by ORS 658.405(4).[1] It further alleges that defendants entered into an agreement under which plaintiff agreed to act as the employer of defendants' employees, which involved advancing defendants the payroll and payroll taxes for their employees and providing the employees with workers' compensation insurance. In return, defendants agreed to repay those costs plus a financing charge of 1.5 percent per month. Plaintiff alleged that defendants failed to make payments under the contract and that plaintiff was therefore entitled to $170,899.50, plus interest accruing from the date of the default. Plaintiff's second claim alleged an equitable claim for relief seeking return of the money that plaintiff advanced to defendants plus the reasonable value of plaintiff's services in acting as a worker leasing company.

■ Defendants moved to dismiss both claims. They argued that the allegations in the complaint demonstrated that plaintiff had assumed duties under the contract that required it to obtain a farm labor contractor's license pursuant to ORS 658.410(1).[2] According to defendants, because

---

[1] ORS 658.405(4) provides, in part, " 'Farm labor contractor' means any person who, for an agreed remuneration or rate of pay, recruits, solicits, supplies or employs workers to perform labor for another to work in forestation or reforestation of lands * * *."

[2] ORS 658.410(1) provides, in part, that "a person may not act as a farm labor contractor without a valid license in the person's possession issued to the person by the Commissioner of the Bureau of Labor and Industries."

plaintiff was not licensed as a farm labor contractor, the agreement was illegal and therefore void and unenforceable as contrary to public policy. The trial court agreed and dismissed both claims. Plaintiff appeals. On appeal, the parties agree that, because plaintiff was not licensed as a farm labor contractor, the acts to be performed by each party under their contract violated the Farm Labor Contractors' Act. They disagree, however, as to whether the contract itself is illegal and void as a result.

■■ The general rule is that an agreement may not be enforced if it is illegal. *Uhlmann v. Kin Daw*, 97 Or 681, 193 P 435 (1920). According to *Uhlmann*, "[a]n agreement is illegal if it is contrary to law, morality or public policy[.] Plain examples of illegality are found in agreements made in violation of some statute; and, stating the rule broadly, an agreement is illegal if it violates a statute or cannot be performed without violating a statute." *Id.* at 69. Where the alleged illegality of a contract derives from some uncodified public policy, courts use a multifactor analysis to determine whether the contract is enforceable. *See Harmon v. Mt. Hood Meadows, Ltd.*, 146 Or App 215, 222, 932 P2d 92 (1997) (applying the factors laid out in the *Restatement (Second) of Contracts* § 178 (1981) to determine whether a contract provision is unenforceable as against some general, uncodified public policy). When, however, the alleged illegality is based on the violation of a statute, the question of the contract's enforceability is one of legislative intent. *See Uhlmann*, 97 Or at 689-90 (holding that the "inquiry is as to the legislative intent" and the court must examine statutory scheme to determine whether the legislature intended to void the agreement at issue).

In this case, the parties agree that the alleged illegality derives from the fact that plaintiff was not licensed as a farm labor contractor as required by ORS 658.410. Accordingly, our task is to determine whether the legislature, in enacting the Farm Labor Contractors Act, intended to void an agreement such as this one. To discern the legislature's intent, we apply the well-established principals of statutory construction laid out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993), and look first to the text and context of the applicable statute.

Plaintiff argues that the plain text and context of the pertinent statutes demonstrate that the legislature did not intend to void agreements like the one at issue in this case. Plaintiff points out that the act contains no express provision voiding such agreements, unlike some other statutory schemes. *See, e.g.*, ORS 701.065 (providing that construction contractors may not maintain action for compensation without proving that they were licensed at the time the cause of action arose); ORS 83.715 (voiding agreements formed by telephone solicitation sales except under certain conditions). Plaintiff asserts that the legislature knows how to void agreements that violate a statute and, had it intended to do so here, the legislature would have done so explicitly. Plaintiff further asserts that, instead of penalizing unlicensed farm labor contractors by voiding any contracts they enter into, the legislature created other specific penalties for both farm labor contractors who violate the statutory scheme and people in the position of defendants, who use the services of an unlicensed farm labor contractor. According to plaintiff, because the legislature set forth a specific array of penalties for people in the position of plaintiff and defendants, it did not intend to impose the additional undeclared penalty of voiding a contract between the parties.

Defendants counter that the absence of an express provision voiding the type of contract at issue here is not determinative. Relying on *Wheeler v. Bucksteel Co.*, 73 Or App 495, 498, 698 P2d 995 (1985), defendants urge us to examine

"the entire statutory scheme, rather than emphasiz[e] the presence or absence of a particular provision, to determine whether the statutory prohibition goes to the substance of the challenged agreement or is collateral to it and the relation of the protective purpose of the legislation to the subject matter of the contract."

Defendants argue that the "protective purpose" of the statutory scheme—which is to protect the public from unqualified, incompetent, or unreliable persons—would be frustrated if this contract were enforceable between an unlicensed contractor and a third party who uses the services of that contractor.

We begin with the text of the Farm Labor Contractors' Act (the Act), which provides a comprehensive statutory scheme for the regulation of farm labor contractors. The Act sets out express rules governing farm labor contractors. In addition to those express provisions, the Act also delegates broad-ranging authority to the Commissioner of the Bureau of Labor and Industries (BOLI) to fill any gaps in the statutory scheme. *See* ORS 658.407 (authorizing the commissioner to "administer and enforce" the Act and to promulgate appropriate rules for doing so). As noted, and of importance in this case, the Act requires anyone acting as a farm labor contractor to obtain a license from the commissioner. ORS 658.410(1) ("Except as provided by ORS 658.425 and subsection (3) of this section,[3] a person may not act as a farm labor contractor without a valid license in the person's possession issued to the person by the Commissioner of [BOLI]."). It also requires contractors, among other things, to (1) exhibit their licenses upon request, (2) furnish workers with work agreements containing certain specified information about the rules governing the work agreements and the workers' rights, and (3) file certain information relating to those agreements, as well as certain payroll records, with the BOLI's commissioner. *See* ORS 658.440(1)(a)-(i) (describing general duties of farm labor contractors). In addition, the Act requires contractors to comply with certain regulations governing the recruitment, working conditions, housing, and commuting of their workers. *See* ORS 658.440(2), (3) (describing additional duties of farm labor contractors).

The Act expressly provides that "[a]greements by employees purporting to waive or to modify their rights under this chapter are void as contrary to public policy." ORS 658.487. The Act does not, however, contain any express provision voiding contracts entered into by an unlicensed farm labor contractor and a third party. Instead, the Act contains three different mechanisms for ensuring compliance with its licensing provisions.

The first is a private right of action that workers may bring against any farm labor contractor who violates

---

[3] Neither party claims that the licensing exception in subsection (3) for certain corporations is applicable in this case.

certain provisions of the Act. ORS 658.453(4). A worker who prevails in such an action may recover the worker's actual damages or $1,000, whichever is greater. Notably, however, although the worker has a right of action against a farm labor contractor who violates certain of the general duties described in ORS 658.440, including the failure to display a license upon request, a worker cannot bring an action against a farm labor contractor based on the contractor's failure to obtain a license in violation of ORS 658.410(1). *See* ORS 658.453(4) (listing statutory provisions that will give rise to a private right of action when violated). Thus, the Act does not confer a private right of action against a farm labor contractor, such as plaintiff, whose only alleged offense is failing to obtain a license.

The second enforcement mechanism is a civil penalty imposed by BOLI's commissioner. That mechanism expressly applies to a farm labor contractor who fails to obtain a license. In particular, under ORS 658.453(1), the commissioner "may assess a civil penalty not to exceed $2,000 for each violation" on "a farm labor contractor who, without the license required by ORS 658.405 to 658.503, recruits, solicits, supplies or employs a worker." Whether to impose a penalty for failing to obtain a license is committed to the discretion of the commissioner.[4]

The third enforcement mechanism is a provision allowing any person, or the commissioner, to seek an injunction against a person who is not properly licensed under ORS 658.410 to prevent that person from acting as a farm labor contractor. ORS 658.475. A person prevailing in such an action may recover prevailing party costs and disbursements and reasonable attorney fees. *Id.*

---

[4] In general, the commissioner considers a number of factors in determining whether to impose a penalty and in determining the amount of that penalty. *See* OAR 839-015-0510 (listing criteria for determining penalties). With regard to the penalty for violating the licensing requirement in ORS 658.410, the commissioner has discretion whether to impose a penalty. If the commissioner decides to do so, however, the amount of the penalty is subject to a set schedule of *minimum* penalties. *See* OAR 839-015-0512(3) (prescribing a minimum penalty of $500 for a first violation; $1,000 for a first repeated violation; and $2,000 for a second and each subsequent repeated violation).

The Act's provisions are not limited to regulating the responsibilities and liabilities of farm labor contractors. In addition to those provisions, the Act regulates the responsibilities and liabilities of third parties who use the services of any unlicensed farm labor contractor. Just as the Act contains mechanisms to enforce the obligation of a farm labor contractor to operate with a license, so too does the Act contain mechanisms to enforce the obligation of third parties to do business only with licensed farm labor contractors. Those mechanisms are parallel to and complement those enforcing the licensing obligation.

First, as earlier described, under ORS 658.453(4), a worker has a private right of action against the farm labor contractor who, among other things, fails to carry or display a license. In addition to imposing liability for damages against the unlicensed farm labor contractor, the worker can impose joint and several liability against a person who knowingly uses the unlicensed contractor's services. ORS 658.465(1) ("A person who knowingly uses the services of an unlicensed farm labor contractor shall be personally, jointly and severally liable with the person acting as a farm labor contractor to the same extent and in the same manner as provided in ORS 658.453(4)."). The requirement of "knowingly" using an unlicensed contractor's services is satisfied by constructive as well as actual knowledge. Under the applicable BOLI rule, a person knowingly uses the services of an unlicensed contractor if he or she actually knows that the contractor does not have a license or if the person does not take appropriate steps to determine whether the contractor has such a license. *See* OAR 839-015-0605(2) (describing reasonable steps a third party must take to determine whether a farm labor contractor is validly licensed).

Second, the Act authorizes the commissioner to impose a civil penalty of up to $2,000 for anyone who uses the services of an unlicensed farm labor contractor. ORS 658.453(1)(f). That penalty attaches regardless of whether the third party has knowledge that the farm labor contractor is unlicensed.

Finally, the Act authorizes the commissioner or any other person to bring an action seeking to enjoin anyone

using the services of an unlicensed farm labor contractor and to recover costs and reasonable attorney fees. ORS 658.475. Any such injunction is addressed to "future violations" of the licensing obligation only. *Id.*

As that overview reveals, the legislature, through the Act's express provisions and the broad delegation of regulatory authority to the commissioner, has enacted a comprehensive scheme for regulating farm labor contractors and for enforcing those regulations. We agree with plaintiff that the Act leaves no perceptible room for additional court-crafted mechanisms to enforce the licensing obligations for farm labor contractors. That is so for two reasons.

First, the statutes and regulations combined provide for ample enforcement mechanisms. The regulatory scheme provides the following consequences for both unlicensed farm labor contractors and those who use their services: (1) they may be enjoined by any person; (2) a private right of action arises on behalf of workers against the unlicensed contractor, one in which those who use the contractor's services can be held jointly and severally liable; and (3) both the contractors and those who use their services face penalties at the discretion of the commissioner. For this court to impose an additional penalty not specified in the statute would intrude on the authority of the legislature and its delegation to the commissioner to administer and enforce the provisions of the Act and to exercise discretion in imposing penalties against farm labor contractors. That is especially true with respect to the penalty sought by defendants in this case—namely, voiding the contract with defendants. The Act contains an express provision specifying that certain contracts—those that purport to waive or modify the rights given to employees under the Act—are to be considered void as against public policy. ORS 658.487. For this court to declare that *all* contracts entered into by an unlicensed farm labor contractor are void as against public policy would be to impermissibly insert into the statute that which has been omitted. *See* ORS 174.010 (in construing a statute, we are "not to insert what has been omitted, or to omit what has been inserted * * *").

Second, and contrary to defendants' position, voiding this contract and preventing its enforcement would not

necessarily further the purpose of the Act. If anything, it could frustrate it. The purpose of the Act is to protect workers and ensure their compensation. *Perez v. Coast to Coast Reforestation Corp.*, 100 Or App 115, 118, 785 P2d 365 (1990). It is not to allow other third-party businesses using the services of a farm labor contractor to avoid their contractual obligations. This case is an example of how such a result might harm rather than protect workers. If defendants avoid their obligation to pay plaintiff, plaintiff will be deprived of nearly $171,000 that plaintiff alleges defendants owe plaintiff for worker services. That amount is a windfall to defendants—defendants received the benefit of the workers' labor but no longer employs them and has no direct obligation to pay their wages. Depriving plaintiff of those funds may well place it in a financial position where it cannot meet its payroll obligations, if not for the particular workers that it provided to defendants, then at least to some other workers that it employs. That result may or may not follow in this instance but it clearly is a risk generally in cases of this kind. Allowing a business that uses the services of an unlicensed farm contractor to avoid its contractual obligations to that contractor could dry up the funds needed to pay the workers and ensure their compensation. Whether such an enforcement mechanism is appropriate and wise, given the comprehensive nature of the statutory and regulatory scheme, is for the legislature or the commissioner to determine.

For those reasons, we hold that a farm labor contractor's failure to have a license as required by ORS 658.410(1) does not render any contract with a third party using the contractor's services illegal and unenforceable as contrary to public policy. The trial court therefore erred in dismissing plaintiff's claims.

Reversed and remanded.