247 P.3d 331 (2011)
240 Or. App. 490
Thomas W. MOSSBERG, Ph.D., Plaintiff-Appellant,
v.
UNIVERSITY OF OREGON, a public body of the State of Oregon, and Davison Soper, in his individual capacity, Defendants-Respondents, and
Melinda W. Grier, Richard Linton, and John Does 1-5, in their individual capacities, Defendants.
05C20721; A135714.
Court of Appeals of Oregon.
Argued and Submitted October 27, 2009.
Decided February 2, 2011.
*333 Thomas M. Christ, Portland, argued the cause for appellant. With him on the briefs were Julie A. Smith and Cosgrave Vergeer Kester LLP, and J. Channing Bennett and Garrett Hemann Robertson PC.
Erin C. Lagesen, Assistant Attorney General, argued the cause for respondents. With her on the brief were John R. Kroger, Attorney General, and Rolf C. Moan, Acting Solicitor General.
Before ORTEGA, Presiding Judge, and ROSENBLUM, Judge, and LANDAU, Judge pro tempore.
ORTEGA, P.J.
This appeal involves a dispute between the University of Oregon (the University) and plaintiff, who is a former faculty member of the University, over certain personal property. Following his resignation, plaintiff asserted claims against the University for conversion, inverse condemnation, and breach of contract. The trial court dismissed the conversion claim and granted summary judgment to the University on the inverse condemnation and breach of contract claims. For the reasons set forth below, we conclude that, although the trial court properly granted summary judgment in favor of the University with respect to the inverse condemnation claim, it erred in its disposition of plaintiff's conversion and breach of contract claims. We therefore reverse and remand.
The following facts are undisputed. Plaintiff was employed as a physics professor at the University for approximately 17 years. Before that, he was employed as a professor at Harvard University, where certain laboratory equipment was acquired for his use. He brought at least some of that equipment with him when he joined the University faculty.
In 1986, during the process of negotiating the terms and conditions of plaintiff's employment with the University, the University provost sent plaintiff a document captioned "Revised Conditions of Offer to [plaintiff]," which stated, in part:
"If you leave the University of Oregon, you will be able to take with you, at no cost, all equipment purchased on grants for which you were Principal Investigator. The University of Oregon would also recommend to the General Services Department of the State of Oregon that you be allowed to purchase at a fair market value any other equipment obtained to support your research."
Additional equipment was purchased with federal grant funds for plaintiff's use during his employment with the University.
When plaintiff resigned his position with the University in late September 2004, a dispute arose between the parties over plaintiff's entitlement to the laboratory equipment. The University and plaintiff engaged in weeks of negotiations regarding disposition of the equipment but were unable to reach an agreement. Eventually, University employees disassembled the laboratory equipment in the course of moving it, which, *334 according to plaintiff, rendered the equipment worthless. Plaintiff subsequently filed a complaint against the University alleging, among other things, that the equipment that he brought from Harvard was his personal property and that the University converted that property following his resignation. The trial court granted the University's motion to dismiss that claim on the ground that plaintiff was required to assert such a claim via the University's faculty grievance process.
Thereafter, plaintiff filed an amended complaint against the University. This time he alleged, among other things, that the equipment that he brought with him from Harvard was his personal property and that, by virtue of the "Revised Conditions of Offer," the University was contractually obligated to allow him to remove the Harvard equipment and any equipment purchased with federal grants for which he was the principal investigator during his tenure with the University.[1] Plaintiff asserted an inverse condemnation claim against the University on the basis that the University's handling of the laboratory equipment following his resignation amounted to an uncompensated taking for public use in violation of Article I, section 18, of the Oregon Constitution. Plaintiff also asserted that the University breached its contractual obligation by refusing to allow him to take the laboratory equipment following his resignation. The parties filed cross-motions for summary judgment on both those claims. The trial court granted summary judgment to the University, denied plaintiff's motion, and entered judgment for the University. Plaintiff appeals, assigning error to the trial court's dismissal of his conversion claim and grant of the University's motion for summary judgment on his inverse condemnation and breach of contract claims.

I. CONVERSION CLAIM
We begin by addressing the conversion claim. "To state a claim for conversion, a party must establish the intentional exercise of dominion or control over a chattel that so seriously interferes with the right of another to control it that the actor may justly be required to pay the full value of the chattel." Emmert v. No Problem Harry, Inc., 222 Or.App. 151, 159-60, 192 P.3d 844 (2008). Plaintiff alleged in his original complaint that the laboratory equipment that he brought with him from Harvard was his personal property and that the University converted that property when it refused to return it following his resignation.
The University moved to dismiss the conversion claim pursuant to ORCP 21 A(1), contending that the trial court lacked subject matter jurisdiction because "plaintiff's exclusive remedy is under the Administrative Procedure Act, ORS 183.310-.690." According to the University, the exclusive administrative remedy available to plaintiff was the faculty grievance process set forth in OAR chapter 571, division 3. Plaintiff argued in response that, because he was no longer an employee of the University when it converted his property, he was not eligible to participate in the University's faculty grievance process.
The trial court entered an order granting the University's motion to dismiss. In a letter ruling, the court explained:
"Unfortunately for plaintiff, this claim relates to a condition of his employment with the University. Plaintiff's demand and the alleged later conversion are all related to a condition of his employment that existed while he was employed by the University. Consequently, although plaintiff was not an employee at the time of the alleged conversion, because the claim relates to and stem[s] from a condition of his employment with the University, it remains subject to the provisions of the APA. Because the APA provides for review of the University's action, it is the exclusive means for obtaining review of that action. See Bay River, Inc. v. Envtl. Quality Comm'n, 26 Or.App. 717 [554 P.2d 620] (1976). This *335 court lacks jurisdiction over this claim and, accordingly, dismisses this claim with prejudice."
We review the trial court's determination that it lacked jurisdiction over plaintiff's conversion claim for legal error, Longstreet v. Liberty Northwest Ins. Corp., 238 Or.App. 396, 400, 245 P.3d 656 (2010), and conclude that the trial court erred.[2]
The University has adopted grievance procedures to address certain complaints by individuals associated with the University. See OAR ch. 571, div. 3. With regard to complaints brought by faculty members, a grievance is defined as "a complaint by an academic employee that the employee was wronged in connection with compensation, tenure, promotion, or other conditions of employment or the employee's rights were denied as to reappointment." OAR XXX-XXX-XXXX(1). "Other conditions of employment" include, but are not limited to, "violations of academic freedom, discriminatory employment practices and nondiscriminatory employment practices, and laws, rules, policies and procedures under which the University of Oregon operates." OAR XXX-XXX-XXXX(2). The University contends that plaintiff's complaint about its treatment of the Harvard equipment qualifies as a complaint that he was wronged in connection with one of the "other conditions of [his] employment" within the meaning of OAR XXX-XXX-XXXX(2). We assume, without deciding, that the University's characterization is correct.[3] However, plaintiff was not eligible to participate in the grievance process described in OAR chapter 571, division 3, because he was not an employee of the University at the time of the alleged conversion.
The rules applicable to statutory interpretation also apply to the interpretation of administrative rules. Tye v. McFetridge, 199 Or.App. 529, 534, 112 P.3d 435 (2005), aff'd, 342 Or. 61, 149 P.3d 1111 (2006). To discern the intent behind an administrative rule, "[w]e begin by examining the text of the rule within its context. Unless defined otherwise in the rule, we give the words of the rule their ordinary meanings." Id. OAR XXX-XXX-XXXX(1) defines a grievance to be a complaint by an "employee" that the "employee" has been wronged in certain ways. The term "employee" is not defined, so we give it its common meaning.
An employee is commonly understood to be a person who is employed by another. See Webster's Third New Int'l Dictionary 743 (unabridged ed 2002). If the drafters of OAR chapter 571, division 3, had intended to make the grievance process available to persons other than current employees, they would have stated that the process also was available to a "former" employee or would have replaced the word "employee" with "person" or some other term that is not intrinsically connected to current employment status. In interpreting a rule, we are constrained by the wording actually used and may not insert terms that have been omitted. City of Keizer v. Lake Labish Water Control Dist., 185 Or.App. 425, 431, 60 P.3d 557 (2002), rev. den., 336 Or. 60, 77 P.3d 635 (2003).
*336 As evidence that the grievance process is available to former employees, the University points to OAR XXX-XXX-XXXX(1), which defines a grievance to include a complaint that an "employee's rights were denied as to reappointment." The problem with the University's argument is that, as the University conceded during oral argument, the rules contemplate that decisions to deny reappointment will be made before the expiration of the term of appointment. See, e.g., OAR XXX-XXX-XXXX (describing notice requirements for nonrenewal of appointment of tenured academic staff). Thus, a grievance related to a decision to deny reappointment could be filed while the grievant is still a University employee.
At least two other provisions of OAR chapter 571, division 3, lend contextual support to our determination that the faculty grievance process was not available to plaintiff because he was no longer an employee of the University at the time of the alleged conversion. First, OAR XXX-XXX-XXXX(1) requires that the written statement by which a faculty member initiates a formal grievance "shall include" the grievant's campus address and campus telephone number. Given that former faculty members do not have campus addresses and phone numbers, the rule clearly contemplates that the faculty grievance process is available only to those individuals who are employed by the University when the pertinent dispute arises.
Second, OAR XXX-XXX-XXXX(6) provides that prejudicial action shall not be taken against an employee during the time in which a grievance is pending. However, the implementation of any administrative action that is the subject of the grievance, specifically including the "termination or non-renewal of an employee," is deemed not to be a prejudicial act. In the event of such action, OAR XXX-XXX-XXXX(6)(a) clarifies that, if a timely grievance has been filed, "it shall continue to be processed under these rules regardless of the fact that the grievant may no longer be employed[.]" OAR XXX-XXX-XXXX(6). That clarification would not be necessary if a former employee was otherwise eligible to initiate a grievance.
Accordingly, for the reasons set forth above, the trial court erred in dismissing plaintiff's conversion claim.

II. INVERSE CONDEMNATION CLAIM
We turn to plaintiff's claim for inverse condemnation, which was disposed of on summary judgment. We review a grant of summary judgment viewing "the facts and all reasonable inferences that may be drawn from the facts in favor of * * * the nonmoving party." Outdoor Media Dimensions Inc. v. State of Oregon, 331 Or. 634, 638, 20 P.3d 180 (2001).
"Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. ORCP 47 C. A genuine issue of material fact is lacking when `no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment.' Id."
Outdoor Media Dimensions Inc., 331 Or. at 638-39, 20 P.3d 180.
Plaintiff contends that the laboratory equipment that he brought from Harvard is his private property. He also maintains that he has a contractual right to any equipment obtained with federal grant money for which he was the principal investigator during the time that he was employed by the University. As explained in more detail below, plaintiff alleges that, after his resignation, the University dismantled the entire laboratory without properly documenting the disassembly process, thereby entirely destroying the value of the equipment. According to plaintiff, the University's action amounts to an uncompensated taking for public use in violation of Article I, section 18, of the Oregon Constitution.
Article I, section 18, of the Oregon Constitution provides, in part, that "[p]rivate property shall not be taken for public use * * * without just compensation[.]" An action, such as this one, "to recover the value of private property that the government has taken without first filing condemnation proceedings is referred to as an action for `inverse *337 condemnation.'" Vokoun v. City of Lake Oswego, 335 Or. 19, 26, 56 P.3d 396 (2002). A plaintiff asserting a claim for inverse condemnation must show that the governmental act alleged to constitute a taking was done with the intent to take the property for public use. Id. at 27, 56 P.3d 396; Worman v. Columbia County, 223 Or.App. 223, 234, 195 P.3d 414 (2008); see also Willard v. City of Eugene, 25 Or.App. 491, 494, 550 P.2d 457 (1976) (an inverse condemnation action is proper only where the government has taken property for a public use).
The University argued, in part, that it was entitled to summary judgment on plaintiff's inverse condemnation claim because it did not take the laboratory equipment with the intent to put that property to public use. The trial court assumed that plaintiff could show that he owned the equipment and "that it was a type of property that could be `taken' pursuant to the takings clause[.]" The court concluded, however, that summary judgment was appropriate because there was no evidence that the University intended to take plaintiff's property for a public use. We agree.[4]
Very shortly after his resignation, plaintiff and various University employees began negotiating the ultimate disposition of his laboratory equipment. Although it is clear that plaintiff consistently represented that he believed that he was entitled to all of the equipment, he also proposed donating the majority of it (approximately 95 percent) to the University in return for certain consideration. To be sure, plaintiff's enthusiasm to do so fluctuated over time as a result of his apparent frustration with the progress of the negotiations. However, those negotiations were ongoing, and both parties entertained the possibility of a donation, as late as the first part of December 2004.
In early November 2004, more than a month after plaintiff's resignation, certain members of the physics department faculty and student body began the process of disassembling plaintiff's laboratory equipment. Davison Soper, who was the head of the University's physics department, decided that plaintiff's equipment needed to be moved so that a new physics department faculty member could occupy the laboratory space in which plaintiff's equipment was located. Soper did not receive permission from anyone in the University's administration office before he authorized moving plaintiff's equipment. In fact, Richard Linton, the Vice President for Research and Graduate Studies at the University, had previously instructed Soper, among others, that none of the equipment should be removed pending the conclusion of the donation negotiations between plaintiff and the University.[5]
At Soper's instruction, Michael Raymer, a physics department professor, supervised, but did not participate in, moving plaintiff's laboratory equipment from the larger portion of the room in which it had been located to a smaller adjacent space. The uncontroverted evidence is that Raymer and at least some of the other faculty members participating in the disassembly process were operating under the assumption that plaintiff had decided to donate the majority of the equipment to the University. Accordingly, they disassembled the laboratory equipment into its component parts, without documenting the process so as to permit reassembly of the laboratory as it was originally constituted. The majority of the component parts of the laboratory equipment were placed in the smaller space designated for short-term storage of plaintiff's equipment. However, unbeknownst to Linton, Grier, or even Soper, Raymer allowed some small number of the component pieces to be *338 distributed to or to be used by other faculty members.[6]
Plaintiff contends that the University intended to take his property for public use because Soper decided to move the equipment to advance a public purpose-that is, freeing up laboratory space for the new professor. We disagree. The notion that "public use" equates to "public benefit" in the context of a claim under Article I, section 18, of the Oregon Constitution has been rejected. Port of Umatilla v. Richmond et al, 212 Or. 596, 610, 321 P.2d 338 (1958); Foeller v. Housing Authority of Portland, 198 Or. 205, 233, 256 P.2d 752 (1953). The term "public use" in this context "means a more intimate relationship between the public and an item of property which has been acquired * * * than is denoted by terms such as `public benefit' and `public utility'. `Public use' demands that the public's use and occupation of the property must be direct." Foeller, 198 Or. at 233, 256 P.2d 752. A plaintiff asserting an inverse condemnation claim must show that the government took private property intending to put that property to public use. Here, to the extent that the decision to disassemble plaintiff's laboratory equipment resulted in a taking of his property, the intent was to make use of the physical space formerly occupied by plaintiff's laboratory equipment. That physical space is public property, not plaintiff's private property. We conclude that the University's goal of freeing up laboratory space for use by another professor does not constitute a public use sufficient to support an inverse condemnation claim under Article I, section 18, of the Oregon Constitution.[7]
Plaintiff also argues that the University intended to take his property for public use because "some pieces of equipment were distributed to other university professors" and used by them. The problem with that argument is that plaintiff does not identify, and we are not aware of, any evidence to support plaintiff's contention that the University took his property with the intent to improve the laboratories of its other professors. The University, through Linton, directed that plaintiff's laboratory equipment remain untouched pending resolution of the parties' negotiations regarding a possible donation. Neither the disassembly of plaintiff's laboratory nor the limited distribution of its component parts was authorized by University administration. Indeed, there is no evidence that a single member of the University's administration was even aware of any such activity until after plaintiff initiated this lawsuit.
It is true that Soper authorized moving the laboratory equipment, but he did so in contravention of Linton's directive. Consequently, we are not persuaded that Soper's authorization can be attributed to the University for purposes of analyzing whether the University intended to take plaintiff's property for public use. See Eminent Domain, 27 Am. Jur. 2d § 750 (2004) (a state and its departments cannot be held liable for negligent or ultra vires acts of its officers). In any event, even if we were to assume that Soper's decision to move the equipment in violation of his superior's directive to the contrary could somehow be attributed to the University, there is no evidence that Soper intended to take plaintiff's property for a public use when he authorized moving it. Rather, his direction to Raymer aimed to make room for the new professor.[8] Soper *339 did not dictate the manner in which the equipment was to be moved or authorize use of any of it.
Plaintiff is correct that direct proof of the government's intent to take private property for public use is not necessary; the requisite intent may be inferred in certain circumstances. See, e.g., Vokoun, 335 Or. at 29, 56 P.3d 396 ("A factfinder may infer the intent to take from the governmental defendant's action if * * * the natural and ordinary consequence of that action was the substantial interference with property rights."). Plaintiff's inverse condemnation action is premised on his allegation that the disassembly of the laboratory equipment destroyed the value of the equipment and, thus, substantially interfered with his rights in that property. However, plaintiff does not argue, much less provide any evidence, that the natural and ordinary consequence of the disassembly of the equipment was the destruction of its value. Rather, plaintiff's position is that the value of the equipment would have been preserved if the disassembly process had been properly documented.
The fact that a few University employees may have negligently disassembled plaintiff's laboratory or intentionally exercised control over a small number of its component pieces does not support an inference that the University took plaintiff's property with the intent to put that property to public use. A government employee's negligent or intentionally tortious conduct does not form the basis for an inverse condemnation claim.[9]Worman, 223 Or.App. at 236, 195 P.3d 414. Inferring the requisite intent would be especially unreasonable in light of the undisputed evidence that plaintiff's laboratory equipment was disassembled and, to a very limited extent, used by rank-and-file employees acting contrary to the official directive of the University. Further, at least some of the individuals involved were operating on the assumption that plaintiff ultimately would donate the vast majority of the equipment to the University.[10] It simply is not reasonable to infer from those facts that any of the individual employees, much less the University, intended to take plaintiff's property for public use within the meaning of Article I, section 18, of the Oregon Constitution.
Plaintiff does not identify any evidence in the summary judgment record from which a reasonable juror could infer that the University intended to take his property for public use. Therefore, the trial court did not err in granting summary judgment to the University on plaintiff's inverse condemnation claim.

III. BREACH OF CONTRACT CLAIM
We turn, finally, to plaintiff's breach of contract claim. Plaintiff alleges that he had a contractual right to the laboratory equipment that he brought with him from Harvard and to the equipment purchased with federal grants for which he was the principal investigator during his tenure at the University. The trial court granted the University's motion for summary judgment on plaintiff's breach of contract claim and denied plaintiff's cross-motion.[11]
*340 With regard to the Harvard property, the trial court concluded that summary judgment in favor of the University was appropriate because "the contract on which plaintiff relies for the authority to take that equipment in no way addresses the status of that equipment."[12] The court also concluded that, even if the purported contract did address the Harvard equipment, the University ultimately fulfilled its obligations under the contract by offering to transfer that equipment to plaintiff. Plaintiff's arguments on appeal focus solely on the equipment obtained under federal grants, and we focus our analysis accordingly.
With regard to the equipment obtained using federal grant funds during plaintiff's employment by the University, the University contended that any duty it had to transfer that equipment should be excused, because performance of that obligation would require it to violate federal and state regulations, 2 CFR section 215.34 and OAR XXX-XXX-XXXX(2), respectively. "The general rule is that an agreement may not be enforced if it is illegal."[13]Mayfly Group, Inc. v. Ruiz, 208 Or.App. 219, 222, 144 P.3d 1025 (2006), rev. den., 342 Or. 344, 153 P.3d 123 (2007). The trial court ruled that, although performance of the contract would not violate 2 CFR section 215.34, it would violate OAR XXX-XXX-XXXX(2). The trial court accordingly held that "the University is discharged from its duty to perform the contract as to all of the equipment acquired after plaintiff arrived at the University." Plaintiff argues on appeal that the trial court erred in deciding that performance of the alleged contract would violate state law. The University argues that summary judgment was correctly granted because the alleged contract was unenforceable under federal and state law. We conclude that the trial court erred in granting summary judgment to the University because the record does not include undisputed evidence from which the trial court could determine if performance of the contract would require the University to violate either the federal or the state regulations cited to the trial court.
The administrative rules of the Oregon University System provide that "[f]ederally funded property will be disposed of in accordance with applicable federal law or federal grant terms, if any. Otherwise, such property will be disposed of in accordance with these rules, or institution rules adopted hereunder." OAR XXX-XXX-XXXX. The parties agree that the applicable federal law is set forth in 2 CFR section 215.34 (2010), and we begin our analysis with that provision.[14]
Title to equipment acquired with federal funds vests in the recipient university under 2 CFR section 215.34(c), subject to certain conditions, which include the following:

*341 "The recipient shall use the equipment in the project or program for which it was acquired as long as needed, whether or not the project or program continues to be supported by Federal funds and shall not encumber the property without approval of the Federal awarding agency. When no longer needed for the original project or program, the recipient shall use the equipment in connection with its other federally-sponsored activities, in the following order of priority:
"(1) Activities sponsored by the Federal awarding agency which funded the original project, then
"(2) Activities sponsored by other Federal awarding agencies."
2 CFR § 215.34(c). When the equipment is no longer needed for the original project or program for which it was acquired, or in connection with the recipient's "other federally-sponsored activities," the disposition of the equipment is governed by 2 CFR section 215.34(g), which provides, in part:
"When the recipient no longer needs the equipment, the equipment may be used for other activities in accordance with the following standards. For equipment with a current per unit fair market value of $5000 or more, the recipient may retain the equipment for other uses provided that compensation is made to the original Federal awarding agency or its successor. * * * If the recipient has no need for the equipment, the recipient shall request disposition instructions from the Federal awarding agency. The Federal awarding agency shall determine whether the equipment can be used to meet the agency's requirements. If no requirement exists within that agency, the availability of the equipment shall be reported to the General Services Administration by the Federal awarding agency to determine whether a requirement for the equipment exists in other Federal agencies. The Federal awarding agency shall issue instructions to the recipient no later than 120 calendar days after the recipient's request and the following procedures shall govern.
"(1) If so instructed or if disposition instructions are not issued within 120 calendar days after the recipient's request, the recipient shall sell the equipment and reimburse the Federal awarding agency an amount computed by applying to the sales proceeds the percentage of Federal participation in the cost of the original project or program. However, the recipient shall be permitted to deduct and retain from the Federal share $500 or ten percent of the proceeds, whichever is less, for the recipient's selling and handling expenses.
"(2) If the recipient is instructed to ship the equipment elsewhere, the recipient shall be reimbursed by the Federal Government by an amount which is computed by applying the percentage of the recipient's participation in the cost of the original project or program to the current fair market value of the equipment, plus any reasonable shipping or interim storage costs incurred.
"(3) If the recipient is instructed to otherwise dispose of the equipment, the recipient shall be reimbursed by the Federal awarding agency for such costs incurred in its disposition.
"(4) The Federal awarding agency may reserve the right to transfer the title to the Federal Government or to a third party named by the Federal Government when such third party is otherwise eligible under existing statutes."
The trial court held that the University could have satisfied its alleged contractual obligation to plaintiff in compliance with 2 CFR section 215.34(g) "by purchasing any equipment with a fair market value of over $5000 and transferring title of that equipment to plaintiff, and seeking permission from the awarding agency to transfer to LightSmyth the equipment having a fair market value of under $5000."[15] Even assuming that the trial court was correct in its determination that the stated actions would be consistent with the disposition standards detailed in 2 CFR section 215.34(g)(1)-(4), *342 and we harbor some doubt about that question, the disposition provisions of 2 CFR section 215.34(g) only come into play if the recipient "no longer needs" the property. The University has not identified, nor are we aware of, any evidence tending to show that the equipment is no longer needed for the original project or program for which it was acquired by the University or in connection with the University's federally sponsored activities. To the contrary, as we have already discussed in connection with our analysis of plaintiff's inverse condemnation claim, there is evidence that some of the equipment was actually used by members of the University's physics department. It is reasonable to infer from that evidence that the University needed at least some of the equipment at issue after plaintiff's resignation. Therefore, we conclude that the trial court erred in ruling that the University could, as a matter of fact, perform its alleged obligation under the contract in a manner consistent with the requirements of 2 CFR section 215.34. The University was not entitled to summary judgment as to that issue, because there is a disputed issue of material fact as to whether or not the University could perform its alleged contractual obligation consistently with federal requirements.
We next turn to the question of whether, as plaintiff contends, the trial court erred in granting summary judgment to the University based on its determination that the University would be required to violate state law if the alleged contract between the parties were enforced. For reasons similar to those discussed immediately above, we conclude that there is insufficient evidence in the record to support the trial court's determination that performance of the alleged contract by the University necessarily violated state law.
The administrative rules in OAR chapter 580, division 40, govern the disposal of surplus property by institutions of higher education in Oregon. OAR XXX-XXX-XXXX. The trial court granted summary judgment on the basis that transferring the laboratory equipment to plaintiff would "violate OAR XXX-XXX-XXXX(2), which prohibits an institution that is disposing [of] surplus equipment from giving to a current or former employee any benefit or opportunity not given to the general public."[16] The problem with the trial court's analysis is that the record on appeal does not support the trial court's implicit assumption that the equipment at issue qualifies as "Surplus Property" within the meaning of OAR chapter 580, division 40.
"Surplus Property" is defined as "all personal property * * * that is worn-out, obsolete or excess to * * * an institution's needs, or otherwise unsuitable for intended use, the disposal of which would be to the financial benefit of the institution * * *." OAR XXX-XXX-XXXX(8). The University has identified no evidence in the record establishing, as a matter of law, that the equipment at issue was "worn-out, obsolete or excess to" its needs or that it was "otherwise unsuitable for [its] intended use." Accordingly, the trial court erred in granting summary judgment to the University on the basis that performance of the alleged contract necessarily violated OAR XXX-XXX-XXXX(2).
Finally, the University argues that, even if its performance is not excused on the basis of illegality, we should affirm on the ground that it fully complied with its obligations under the contract when it ultimately offered to allow plaintiff to take all of the equipment that he had indicated he wanted to take. Although the University presented this argument to the trial court, the trial court did not address it in granting summary judgment. There are genuine issues of material fact that preclude us from affirming on the basis that the University fully discharged its obligations under the contract. For example, the parties dispute whether the University timely offered to allow plaintiff to take the pertinent equipment. Plaintiff maintains that he rescinded his offer to donate a majority of the equipment and that the University's offer was rendered "worthless" by the manner in which the laboratory equipment was disassembled. Accordingly, *343 we decline the University's invitation to affirm on a basis that was not addressed by the trial court.
Judgment on claims for conversion and breach of contract reversed and remanded; otherwise affirmed.
NOTES
[1] Plaintiff also asserted additional claims against the University and certain individual defendants associated with the University in his original and amended complaints. Those additional claims have been resolved in disputed proceedings before the trial court and by agreement of the parties. Only the trial court's disposition of the conversion, inverse condemnation, and breach of contract claims is directly at issue in this appeal.
[2] There is a "general rule of administrative law that as to matters within the jurisdiction of an administrative agency, judicial review is only available after the procedure for relief within the administrative body itself has been followed without success." Outdoor Media Dimensions Inc. v. State of Oregon, 331 Or. 634, 661, 20 P.3d 180 (2001) (internal quotation marks and brackets omitted). However, the APA does not provide for judicial review of every agency order. This court has held, on at least one occasion, that the State Board of Education's final disposition of an employee's grievance does not yield an order subject to judicial review within the meaning of ORS 183.310. See Gruszczynski v. Board of Higher Education, 106 Or.App. 260, 806 P.2d 1168 (1991). The trial court and the parties assumed that the University's grievance process, where it is applicable, ultimately yields an order that is subject to judicial review. We express no opinion as to the accuracy of that assumption.
[3] OAR XXX-XXX-XXXX(1) provides that "[t]he faculty grievance procedure * * * may be utilized" to hear the described types of employment related complaints. (Emphasis added.) In addition, OAR XXX-XXX-XXXX(7) provides that, if the grievant has filed a lawsuit "arising out of actions, omissions, decisions, events or policies which are the subject of a pending grievance or a grievance contemporaneously presented, the University may, in its sole discretion, decline to continue with or to entertain the grievance." We express no opinion as to whether the grievance procedures, where they are available, are mandatory.
[4] Like the trial court, we assume, without deciding, that all of the other requirements of an inverse condemnation claim are satisfied, including that plaintiff has an ownership interest in the laboratory equipment at issue. The University's attorney conceded during the summary judgment hearing that, at least for purposes of analyzing its motion for summary judgment on plaintiff's inverse condemnation claim, plaintiff owned the Harvard property.
[5] According to the concise statement of material facts filed by plaintiff in connection with his cross-motion for summary judgment, Melinda Grier, then the University's general counsel, issued a similar edict prior to commencement of the laboratory equipment disassembly.
[6] The University also argued that it was entitled to summary judgment on plaintiff's inverse condemnation claim because none of the individuals involved in the disassembly of the laboratory equipment had express authority to exercise eminent domain powers on behalf of the University. The University concedes on appeal that the trial court erred to the extent that it found that argument to be persuasive. See Boise Cascade Corp. v. Board of Forestry (S42159), 325 Or. 185, 201-02, 935 P.2d 411 (1997) (a property owner is not required to prove the existence of express eminent domain authority as an element of an inverse condemnation claim). "An inverse condemnation occurs when a governmental entity effectively takes property without actually exercising its power of eminent domain." Dept. of Transportation v. Hewett Professional Group, 321 Or. 118, 130, 895 P.2d 755 (1995).
[7] "[W]hat is a public use is always a question of law for judicial determination." Port of Umatilla, 212 Or. at 611, 321 P.2d 338.
[8] In his amended complaint, plaintiff asserted First Amendment and Due Process claims under the United States Constitution against certain individuals associated with the University. The trial court granted summary judgment against plaintiff on those claims, concluding that there was "uncontradicted" evidence that plaintiff's laboratory equipment was moved to provide space for the new faculty member and that plaintiff had provided no evidence that the University's stated purpose was mere pretext. Plaintiff has not challenged the entry of summary judgment in favor of the individual defendants.
[9] Plaintiff's attorney appeared to concede at the hearing on the cross-motions for summary judgment that some of the equipment needed to be used to be properly maintained. We do not imply any determination that the manner in which the laboratory equipment was disassembled was, in fact, negligent or that the individuals involved in that process engaged in tortious conduct.
[10] As we have already noted, plaintiff and various University employees were discussing the possibility of a donation when the disassembly process began. Moreover, before the disassembly process commenced, plaintiff appointed a representative who, along with Raymer, inspected the then-intact laboratory and designated those items that plaintiff wished to take and those that he, at least conditionally, intended to donate.
[11] Plaintiff assigns error to the entry of summary judgment in favor of the University. He does not argue that the trial court erred in denying his motion for summary judgment.
[12] Although the trial court held that plaintiff did not have a contractual right to the Harvard property, it acknowledged that plaintiff was not foreclosed from asserting an actual ownership interest in that property.
[13] That general rule is subject to exception. See, e.g., Perla Development Co. v. Pacificorp, 82 Or. App. 50, 54, 727 P.2d 149 (1986), rev. den., 303 Or. 74, 734 P.2d 354 (1987) (a party may agree to assume the risk of paying damages in the event of a supervening illegality). We assume, without deciding, that none of those exceptions applies here and that the trial court was correct to excuse the University from performing its alleged obligation to transfer the equipment to plaintiff if performance of that duty would require the University to violate either or both of the regulations at issue.

The University did not assert illegality as an affirmative defense in its answer to the amended complaint, as required by ORCP 19 B. However, plaintiff did not object to entry of summary judgment in the trial court on that basis and does not raise that issue on appeal. Plaintiff thus failed to preserve any such objection. Secor Investments, LLC v. Anderegg, 188 Or.App. 154, 170, 71 P.3d 538, rev. den., 336 Or. 146, 82 P.3d 162 (2003).
[14] 2 CFR Part 215 sets forth the uniform administrative requirements for federal grants to specified types of entities, including institutions of higher education. The provisions of 2 CFR Part 215 were not promulgated until May 2004, shortly before plaintiff's resignation from the University. Prior to that date, the disposition of property funded with federal grants was governed by Office of Management and Budget Circular A-110. The University contends, and plaintiff does not dispute, that the material provisions of the earlier circular were the same as 2 CFR Part 215. See 2 CFR § 215.0(e) ("The guidance in this part previously was issued as OMB Circular A-110. Subparts A through D of this part contains the guidance that was in the attachment to the OMB circular.").
[15] LightSmyth Technologies, Inc., is a private company cofounded by plaintiff which conducts research funded, at least in part, by federal grants.
[16] OAR XXX-XXX-XXXX(2) provides that "[n]o current or former employee or agent for such will be granted any benefit or opportunity not granted the general public in acquisition of items through the disposal process."