Argued and submitted May 12, 2010, reversed and remanded February 23, petition for review denied June 30, 2011 (350 Or 530)

MAYFLY GROUP, INC.,
an Oregon corporation,
*Plaintiff-Appellant,*

*v.*

Jerry RUIZ,
dba J. Ruiz Farms;
and Jeff Ruiz,
dba J. Ruiz Farms,
*Defendants-Respondents.*

Marion County Circuit Court
02C20119; A139724

250 P3d 360

John M. Berman argued the cause and filed the briefs for appellant.

David A. Hilgemann argued the cause for respondents. On the brief were Law Offices of David Hilgemann, and Raymond A. Reid.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

This is the second time that these parties have appeared before this court on this case involving plaintiff's claim for breach of contract. On the first appeal, we reversed the trial court's dismissal of the claim on the ground that plaintiff's failure to be licensed as a farm labor contractor, ORS 658.410, rendered the contract unenforceable. On remand, the parties filed amended pleadings, and, based on those amended pleadings, the trial court dismissed plaintiff's claim under ORCP 21 on the ground that plaintiff was not licensed as a worker leasing company, ORS 656.850. The trial court concluded that, because plaintiff was not properly licensed, the contract between plaintiff and defendants was void or was unenforceable as violating public policy. On appeal, plaintiff asserts that, even though performance of the contract violated a licensing statute, that does not make the contract void as contrary to public policy. We agree with plaintiff and reverse and remand.

Because the court dismissed the complaint under ORCP 21, we give plaintiff the benefit of all favorable inferences that may reasonably be drawn from the allegations of the amended complaint. *Simons v. Beard*, 188 Or App 370, 377, 72 P3d 96 (2003). The fourth amended complaint alleges that, in September 1999, plaintiff and defendants entered into an agreement providing that plaintiff would supply defendants with temporary farm workers and would pay them wages. Under the agreement, plaintiff also accepted responsibility to pay defendants' workers' compensation insurance and payroll taxes. Defendants agreed to pay plaintiff for the labor provided by plaintiff and a finance charge of 1.5 percent per month.

Plaintiff alleged that defendants failed to pay for services under the contract. In Count I, plaintiff alleged that defendants owe plaintiff $167,539.60, plus 18 percent interest accruing from the date of default. In Count II, plaintiff alleged that, if the contract was not enforceable, plaintiff was entitled to reasonable value for the services rendered, together with interest at the legal rate.

This case first came before this court after defendants moved to dismiss plaintiff's claims because "plaintiff

had assumed duties under the contract that required it to obtain a farm labor contractor's license pursuant to ORS 658.410(1)." *Mayfly Group, Inc. v. Ruiz*, 208 Or App 219, 221, 144 P3d 1025 (2006), *rev den*, 342 Or 344 (2007) (*Mayfly Group I*). Defendants argued that, "because plaintiff was not licensed as a farm labor contractor, the agreement was illegal and therefore void and unenforceable as contrary to public policy." *Id.* at 221-22. The trial court agreed with defendants and dismissed plaintiff's claims. *Id.* at 222. On appeal, we reversed and remanded, holding that, although performance of the contract violated ORS 658.410(1), that did not render the contract illegal and unenforceable as contrary to public policy. *Id.* at 228.

On remand, a week before the scheduled trial date, defendants filed a motion to postpone the trial based on newly discovered evidence that plaintiff was not licensed as a worker leasing company until August 31, 2001, nearly two years after the parties entered into the agreement. Defendants then filed a second motion to dismiss, arguing that, because plaintiff was not licensed as a worker leasing company, the contract was unenforceable. Plaintiff, in turn, filed a motion for summary judgment, asserting that the lack of a license as a worker leasing company was irrelevant to plaintiff's right to be paid, and that plaintiff was entitled to judgment as a matter of law. The court granted defendants' motion to dismiss and ruled that plaintiff's motion for summary judgment "is thereby moot."

On appeal, plaintiff concedes that, although it was acting as a worker leasing company under the agreement beginning in September 1999, it did not become licensed as a worker leasing company until August 31, 2001. Plaintiff asserts, however, that it was not the intent of the legislature to make an agreement void or unenforceable if a worker leasing company failed to comply with the leasing requirements. Defendants make an argument that is very similar to their position in *Mayfly Group I*, although based on a different statute: that the trial court correctly granted their motion to dismiss because plaintiff was not licensed as a worker leasing company, and, therefore, the contract was unenforceable.

■■■ "The general rule is that an agreement may not be enforced if it is illegal." *Mayfly Group I*, 208 Or App at 222

(citing *Uhlman v. Kin Daw*, 97 Or 681, 193 P 435 (1920)). But, as we said in *Mayfly Group I*, "[w]hen * * * the alleged illegality is based on the violation of a statute, the question of the contract's enforceability is one of legislative intent." 208 Or App at 222. We review questions of statutory interpretation for errors of law. *Shin v. Sunriver Preparatory School, Inc.*, 199 Or App 352, 372, 111 P3d 762, *rev den*, 339 Or 406 (2005). To determine the intent of the legislature in enacting a statute, we examine the text of the statute in context along with any helpful legislative history offered by the parties. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

In *Mayfly Group I*, we noted that the Farm Labor Contractors' Act (Act), ORS 658.405 to 658.503, provided three different mechanisms for enforcing compliance with its licensing procedures:

> "The regulatory scheme provides the following consequences for both unlicensed farm labor contractors and those who use their services: (1) they may be enjoined by any person; (2) a private right of action arises on behalf of workers against the unlicensed contractor, one in which those who use the contractor's services can be held jointly and severally liable; and (3) both the contractors and those who use their services face penalties at the discretion of the commissioner."

208 Or App at 227. We explained that the Act did not contain any express provisions voiding contracts entered into by an unlicensed farm labor contractor and explained further that the Act left no room for additional court-crafted mechanisms of enforcement because that would "intrude on the authority of the legislature and its delegation to the commissioner to administer and enforce the provisions of the Act and to exercise discretion in imposing penalties against farm labor contractors." *Id.* We also concluded that, because the purpose of the Act is to protect workers and ensure their compensation, voiding the contract and preventing its enforcement would not necessarily further that purpose. *Id.* at 227-28. Accordingly, we held that the plaintiff's failure to have a license as required by ORS 658.410(1) did not render the contract illegal and unenforceable.

The statutes at issue here, ORS 656.850 and ORS 656.855, do not contain express provisions voiding an

agreement like the agreement between plaintiff and defendants. ORS 656.850(1)(a) provides that a "worker leasing company" means "a person who provides workers, by contract and for a fee, to work for a client but does not include a person who provides workers to a client on a temporary basis." Under ORS 656.850(2), no one shall perform services as a worker leasing company without first obtaining a license from the director of the Department of Consumer and Business Services (DCBS).

ORS 656.855(1) states that "the Director of the Department of Consumer and Business Services, by rule, shall establish a licensing system for worker leasing companies." That licensing system includes the authority to create rules regarding applications, to set fees, and to prescribe the form and content of records. Under ORS 656.855(1)(c), the director has the authority to "[p]rescrib[e] those violations of this section or of ORS 656.850 for which the director may refuse to issue or renew or may suspend or revoke a license."

The director of DCBS has in fact exercised the authority to prescribe violations of ORS 656.850 by enacting OAR 436-050-0480, which first went into effect on January 1, 2004.[1] Under OAR 436-050-0480, worker leasing companies

---

[1] OAR 436-050-0480 provides:

"(1) Failure to provide timely notice to the director for proof of coverage and cancellation of workers' compensation insurance policies under ORS 656.419 or OAR 436-160 may result in civil penalties under ORS 656.745.

"(2) The director may assess a civil penalty against an employer who fails to respond to requests for information and fails to meet the requirements of OAR 436-050-0470. The matrix attached to these rules in **Appendix 'A'** will be used in assessing these penalties. Assessment of a penalty does not relieve the employer of the obligation to provide a response.

"(3) An employer failing to meet the requirements set forth in OAR 436-050-0410, 436-050-0450, and 436-050-0455, may be assessed a civil penalty based on the matrix in **Appendix 'B'**, attached to these rules.

"(4) An employer who is found to be operating a worker leasing company without having obtained a license or having failed to renew a license pursuant to ORS 656.850(2), may be assessed a civil penalty based on the matrix attached to these rules in Appendix 'C'.

"(5) For the purposes of ORS 656.850(2), a violation is defined as any month or part of a month in which an employer provides leased workers to a client without having first obtained a worker leasing license.

"(6) Any person or controlling person may also be subject to penalties under ORS 656.990."

(Boldface in original.)

that fail to follow the licensing requirements are subject to civil penalties or criminal penalties under ORS 656.990.[2] Although OAR 436-050-0480 was not promulgated until after the dates of plaintiff's violation of ORS 656.850, the penalties in that rule are the agency's implementation of its authority under ORS 656.855(1)(c) to prescribe violations "for which the director may refuse to issue or renew or may suspend or revoke a license."

We conclude that the legislature intended that the director of DCBS create the penalties for failing to comply with ORS 656.850, and that the trial court erroneously determined that the contract is unenforceable.

The legislative history of ORS 656.850 supports our conclusion that the legislature did not intend to penalize worker leasing companies that failed to be properly licensed by making their contracts unenforceable. Although there was some discussion of possible penalties for violations of ORS 656.850, those discussions did not include any mention of the enforceability of worker licensing contracts where the company was not properly licensed. *See* Tape Recording, House Appropriations Committee "B," HB 2282, July 9, 1993, Tape 129, Side B (statement of John Booten, Ombudsman for Small Businesses) (discussing possible penalties for violations, including refusal to license or criminal prosecution for fraud).

In addition, as plaintiff points out, the legislature knows how to make contracts void and unenforceable when it intends to. *See, e.g.*, ORS 701.131(1) (an unlicensed contractor "may not * * * file a complaint with the Construction Contractors Board or commence an arbitration or a court

---

[2] Under ORS 656.990(1),

"[a]ny person who knowingly makes any false statement or representation to the Workers' Compensation Board or its employees, the Workers' Compensation Board chairperson, the Director of the Department of Consumer and Business Services or employees of the director, the insurer or self-insured employer for the purpose of obtaining any benefit or payment under this chapter, either for self or any other person, or who knowingly misrepresents to the board, the board chairperson, the director or the corporation or any of their representatives the amount of a payroll, or who knowingly submits a false payroll report to the board, the board chairperson, the director or the corporation, is punishable, upon conviction, by imprisonment for a term of not more than one year or by a fine of not more than $1,000, or by both."

action for compensation for the performance of any work or for the breach of any contract for work that is subject to this chapter"); ORS 696.710(1) (an unlicensed real estate broker "may not bring or maintain any action in the courts for the collection of compensation").

■ Relying on *Hunter v. Cunning*, 176 Or 250, 154 P2d 562, *reh'g den*, 154 P2d 562 (1945), defendants argue that the legislature enacted the worker leasing statutes to protect the public and, therefore, a contract entered into with an unlicensed business should be unenforceable as contrary to public policy. But *Hunter* is distinguishable, because the statute at issue in that case expressly stated that an unlicensed real estate broker could not bring a cause of action for collection of compensation. *Id.* at 260 ("Section 30 read as follows: 'No person * * * engaged in the business of, or acting in the capacity of, a real estate broker within this state shall bring or maintain any action in the courts for the collection of compensation without alleging and proving that such person * * * was a duly licensed real estate broker at the time the alleged cause of action arose.' " (Omissions in original.)). Here, no provision prohibits an unlicensed worker leasing company from enforcing a contract. Accordingly, the trial court erred in dismissing plaintiff's claim.

In plaintiff's second assignment of error, plaintiff asserts that we should reverse the trial court's ruling denying plaintiff's motion for summary judgment. Plaintiff argues that, when there are cross-motions for summary judgment and the parties assign error to the court's decision to grant one and deny the other, both are subject to review. *Tupper v. Roan*, 227 Or App 391, 396, 206 P3d 237 (2009), *rev'd on other grounds*, 349 Or 211, 243 P3d 50 (2010). In this case, however, there were no cross-motions for summary judgment. Plaintiff filed a motion for summary judgment, but defendants filed a motion to dismiss. The trial court did not rule on plaintiff's motion for summary judgment but, instead, said that it was "moot" in light of the court's decision to grant defendants' motion to dismiss. In addition, plaintiff did not ask the court to rule on its motion for summary judgment after the court stated it was moot. Accordingly, there is no ruling for us to review. *See VTech Communications, Inc. v. Robert Half, Inc.*, 190 Or App 81, 90, 77 P3d 1154 (2003), *rev*

*dismissed,* 337 Or 547 (2004) (holding that there was no ruling to review when the trial court did not rule on plaintiff's motion to strike and plaintiff did not draw that omission to the court's attention).

Reversed and remanded.